# Richmond.

J. C. Cropp v. G. W. Kinsey and John F. Kinsey.

March 19, 1931.

Present, Prentis, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*R. A. McIntyre,* for the plaintiff in error.

*Weaver & Armstrong, Hiden, Bickers & Button, Holmes*

*Hall, R. Gray Williams* and *Edwin H. Gibson,* for the defendants in error.

HOLT, J., delivered the opinion of the court.

In February, 1929, George W. Kinsey and John F. Kinsey, father and son, lived in Rappahannock county, and were extensively there engaged in farming and in cattle raising. The father owned a 600-acre farm in Madison county and one of about 300 acres in Rappahannock. In addition to these fee simple estates, he held a life interest in two Rappahannock farms, one containing 1,980 acres and the other 300 acres. The remainders in them were vested in John F. Kinsey and in his sister, Mrs. Miller, share and share alike. They also owned personal property worth something like $10,000.00.

In common with many men who follow their vocation they felt the stress of wide depression. Their creditors were insistent, and in some instances had already begun litigation; others were threatening to do so. Thus harassed they sought the advice of their counsel, Major E. H. Gibson, who upon investigation, found that the larger part of their indebtedness was primarily that of George W. Kinsey, endorsed by John F. Kinsey. Major Gibson was of opinion that the estate of these two debtors should, in good conscience, be applied first to their joint indebtedness, and advised that George W. Kinsey convey his lands to John F. Kinsey, who in turn should convey it and his life estate to a trustee in trust for their joint debtors.

Due to the want of market for real estate, it was planned that these lands should be held for three years unless in the meantime they could be sold to advantage. If not so sold, the trustee was authorized to hold them for two years longer, provided that accruing profits from operations were sufficient to pay interest and taxes; such a plan might have resulted in withholding them from forced sale for five years.

Approval of joint creditors was contemplated and a meet-

ing of them was called for that purpose at the Rappahannock National Bank. At that meeting certain details in addition were agreed upon. The trustee was authorized to borrow money for financing farming operation, such indebtedness to be a first lien on income. Major Gibson said that it would be necessary to secure the services of an overseer and Mr. Wheeler Almond suggested that John Kinsey be employed at a salary of $500.00 a year. Things went on smoothly at first but Mr. Dudley, who represented the Alexandria National Bank, said that he was unwilling to be bound until he had had an opportunity to consult with its president. Plaintiff was not present and no definite action was taken. Mr. Wood, a director in the Rappahannock National Bank, and Mr. Moffett, who was counsel for a number of creditors, went from the meeting to the home of Mr. Cropp, some ten miles distant, to acquaint him with what had been done and to secure his assent thereto. Mr. Cropp was not at home, but his wife was told of the purpose of this visit. On the following day he came to the town of Washington, when Mr. Wood stated to him the situation in all its detail. Mr. Cropp was not willing to come into the plan without consulting counsel, and so on the same day went to Front Royal for a conference with Mr. Armstrong. Mr. Armstrong was of opinion that the plan suggested was fair and advised its acceptance. Mr. Cropp was still uncertain as to what was best, and went at once to Warrenton to consult Major R. A. McIntyre, who advised him to attempt to secure from the Kinseys a confession of judgment, and a paper was then drafted for the Kinseys to sign, authorizing such a confession. At the same time a petition in attachment was prepared, signed and sworn to. This was on March 1st. The attachment was to be served in the event that the confession was refused. Thus armed, the plaintiff returned to Rappahannock county, secured the services of the sheriff, and went with him to see the Kinseys. They refused to confess judgment, and sought to have Mr. Cropp come in under

the Gibson plan. Mr. Cropp said that at this interview G. W. Kinsey told him that he wanted him to get his money, and that John F. Kinsey said that he would have to go into this arrangement or get nothing since they would be forced into bankruptcy if the plan failed, and then stated to him that " 'If you do not go into this arrangement we will see that you get nothing,' and he further said that one of the Kinseys said, 'If it had not been for you and the Alexandria National Bank the plan would have gone through.' "

No agreement was reached, and plaintiff's attachment was on the same day, March 1, 1929, levied on personal property, and on the following day on the real estate.

The affidavit which supports it charges that these defendants were converting, or about to convert, or were about to assign or dispose of, their property with intent to hinder, delay or defraud their creditors.

Plaintiff's debt is evidenced by a note for $1,641.28, dated April 5, 1928, and due December 5, 1928, made by G. W. Kinsey and endorsed by John F. Kinsey. This note is a renewal and plaintiff was promised that it would be paid when due. After the attachment to enforce its payment issued, a number of judgments were confessed and two deeds of trust were executed to secure other creditors.

The plan suggested, which it is charged evidences a fraudulent intent, was not one devised by these debtors at all but by Major Gibson, a lawyer of highest standing. It is manifest that its acceptance was conditioned upon approval by joint creditors, and it is perfectly clear that it fell through and was abandoned before levy, because plaintiff and the Alexandria National Bank refused to approve. A discussion of this inchoate abandoned scheme would be unfruitful; suffice it to say that it was abandoned.

Nothing done shows by remotest suggestion any purpose on behalf of these defendants to hinder, delay or defraud their creditors. Such delay as might have followed was to have

been with their consent. They were assembled that this might be secured. It was refused, and so that matter was at an end.

It is true that the Kinseys threatened to go into bankruptcy in the event of its rejection, but they had the right to go into bankruptcy. It is likewise true that they afterwards confessed judgments in favor of certain creditors and executed two deeds of trust, one of which secured debts amounting to about $10,000.00, and the other nine small debts the sum of which is not given. No deed of general assignment was ever made, and the creditors so favored received a preference which plaintiff had previously sought in vain to secure for himself. There was no fraud in this and no purpose to hinder or delay any creditor. The only scheme ever devised was the rejected Gibson plan.

These confessions and these deeds of trust are evidence of no improper purpose entertained at the time the attachment was levied. The attachment did not follow them, but they followed the attachment, and from the viewpoint of the defendants were made necessary by it. The attachment was dismissed as it should have been.

The judgment complained of is plainly right and must be affirmed.

*Affirmed.*